IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ZIPPORAH L.,[1] <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, <br><br> Defendant. | Case No. 3:22-cv-01654-HL <br><br> **OPINION AND ORDER** |

HALLMAN, United States Magistrate Judge:

Plaintiff Zipporah L. brings this action under the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Act. 42 U.S.C. § 401 *et seq*. For the following reasons, the decision of the Commissioner is AFFIRMED.

**STANDARD OF REVIEW**

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming,

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name for non-governmental parties and their immediate family members.

modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

## BACKGROUND

### I.     Plaintiff's Application

Plaintiff alleges disability based on occipital neuralgia, syringomyelia, cervicalgia, fibromyalgia, scoliosis, lumbago with sciatica, and depression. Tr. 61-62.[2] At the time of her alleged onset date, she was 43 years old. Tr. 61. She has completed high school and two years of college but has no past relevant work. Tr. 28, 54.

---

[2] Citations to "Tr." are to the Administrative Record. (ECF 12).

Plaintiff protectively applied for SSI on January 31, 2020, alleging an onset date of September 1, 2019. Tr. 61-62. Her application was denied initially on April 14, 2020, and on reconsideration on December 24, 2020. Tr. 71, 92-93. Plaintiff subsequently requested a hearing, which was held on October 26, 2021, before Administrative Law Judge ("ALJ") John Michaelsen. Tr. 35. Plaintiff appeared and testified at the hearing, represented by counsel. Tr. 35-59. A vocational expert ("VE"), Kelly McCain, also testified. Tr. 52-57. On November 10, 2021, the ALJ issued a decision denying plaintiff's claim. Tr. 29. Plaintiff requested the Appeals Council review ALJ Michaelsen's decision, which was denied on August 30, 2022. Tr. 1-6. Plaintiff then sought review before this Court.

## II.     Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.  At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's]

physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## III. The ALJ's Decision

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since her application date. Tr. 21.

At step two, the ALJ determined that plaintiff has the following severe impairments: "fibromyalgia, degenerative disc disease, occipital neuralgia and depression." *Id.*

At step three, the ALJ determined that plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 22. The ALJ then resolved that plaintiff had the RFC to do light work except that she is limited to simple, repetitive, routine tasks. Tr. 23.

At step four, the ALJ found that plaintiff had no past relevant work. Tr. 28. At step five—considering plaintiff's age, education, work experience, and RFC—the ALJ found that a significant number of jobs existed in the national economy that plaintiff could perform, including work as a merchandise marker, production assembler, and fast-food worker. Tr. 28. Thus, the ALJ concluded that plaintiff is not disabled. Tr. 29.

## DISCUSSION

Plaintiff argues that the ALJ committed three errors: (1) failing to recognize plaintiff's breast cancer and anemia severe at step two; (2) failing to identify specific, clear and convincing reasons for rejecting plaintiff's subjective symptom testimony as it pertains to her fatigue; and (3) failing to incorporate limitations from fatigue into plaintiff's RFC.

**I.     Step Two**

Plaintiff contends that the ALJ failed to recognize plaintiff's anemia and breast cancer (invasive carcinoma) as severe impairments. Pl.'s Opening Br. 3. Because the ALJ continued with the sequential analysis, any error at step two was harmless.

At step two, the ALJ determines "whether the claimant had severe impairments during the period for which he seeks disability benefits." *Glanden v. Kijakazi*, 86 F.4th 838, 843 (9th Cir. 2023) (citing 20 C.F.R. § 404.1520(a)(4)(ii)). An impairment is severe "if it 'significantly limits' an individual's 'ability to do basic work activities.'" *Id*. (citing 20 C.F.R. § 404.1520(c)). The step-two severity analysis is a "threshold showing," *Yuckert*, 482 U.S. at 147, that serves to "identify[ ] at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Id.* at 153. In evaluating whether the claimant's impairments are severe, "the ALJ must consider the combined effect of all of the claimant's impairments on her ability to

function, without regard to whether each alone was sufficiently severe." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citations omitted).

"Step two is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (citing *Bowen v. Yuckert*, 482 U.S. 137, 146-47, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987)). Step two errors are harmless so long as the ALJ found at least one severe medically determinable impairment, the sequential process proceeded to step three, and the ALJ included limitations due to all the medically determinable impairments, severe and non-severe, in formulating the claimant's residual functional capacity. *Buck*, 869 F.3d at 1049. Thus, even if the ALJ erroneously finds that particular impairments are non-severe at step two, the error is harmless so long as the ALJ considers all of the claimant's severe and non-severe impairments at subsequent steps of the analysis. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Here, the ALJ found that plaintiff had multiple severe impairments at step two but concluded that her breast cancer and anemia were "non-severe." Tr. 21. As support for that conclusion, the ALJ referenced medical records showing that plaintiff underwent chemotherapy from February 20, 2021, to June 25, 2021, before getting a double mastectomy on August 5, 2021. Tr. 2729, 3372, 3381. Subsequent records reveal that plaintiff had no residual invasive carcinoma, that it was recommended plaintiff take Tamoxifen, but that no further treatment was necessary. Tr. 3617. Because the plaintiff's breast cancer resolved well before the durational 12-month requirement, the ALJ found her breast cancer non-severe. Tr. 22. For plaintiff's anemia, the ALJ referenced a medical record noting that plaintiff's iron deficiency anemia was mild. Tr. 962. The ALJ reasoned that there was no evidence of any related symptoms or work-related functional limitations due to anemia, making her anemia non-severe. *Id*.

Whether plaintiff's breast cancer[3] and anemia are designated as severe or non-severe impairments, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments when formulating the RFC. SSR 96-8p. Because step two was resolved in plaintiff's favor, and because the ALJ continued with the sequential analysis, any error at step two was harmless. *Buck*, 869 F.3d at 1049.[4]

## II.     Subjective Symptom Testimony

Plaintiff contends that the ALJ failed to provide specific, clear and convincing reasons to reject her symptom testimony. Pl.'s Opening Br. 8-10. Specifically, plaintiff contends that her daily activities do not provide a proper basis for discounting plaintiff's testimony, and that her records are not inconsistent with her statements. *Id*. at 8-9. This Court disagrees.

### A.     Legal Standards

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id.*

---

[3] Plaintiff's breast cancer would not have qualified as severe because, regardless of whether or not her breast cancer was expected to last for at least 12 months, it resolved in less than six.

[4] Plaintiff also argues that the non-severe finding led to an incorrect RFC. Pl.'s Opening Br. 3-14. To the extent that plaintiff contends the ALJ erred in assessing her subjective symptom testimony and failed to consider fatigue stemming from breast cancer and anemia when formulating her RFC, this Court addresses those arguments below.

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

B.   **Plaintiff's Testimony**

At the hearing, plaintiff reported that she could not work on a regular, full-time basis because of invasive ductal carcinoma in her left breast, chemotherapy treatments for her breast cancer, sciatica, occipital neuralgia, and extreme fatigue caused by hypothyroidism and anemia. Tr. 41-42. She testified that, due to her fatigue, even getting out of bed was extremely difficult. Tr. 41. She also testified that moving her head causes extreme pain, that she feels comfortable in a reclining position, and that she has been receiving the maximum dosage of her pain medications. Tr. 42. When asked about her medications and their efficacy, plaintiff stated she was taking Gabapentin, Lyrica, Flexeril, Effexor, Tamoxifen, Pantoprazole, and Ibuprofen, and

that her medications do help. Tr. 43-44. The gabapentin and Lyrica are generally helpful, but she has days where her symptoms are too severe. Tr. 44. She takes pantoprazole for thyroid replacement therapy, but she was not sure if it was helping. Tr. 45. When asked about her work, plaintiff stated that she is a photographer who has been self-employed for the past 14 years, and that she earned most of her living from documenting events. Tr. 43. She also stated that, due to her impairments, she was transitioning into a studio-like environment because it required less physical exertion. Tr. 44.

Plaintiff testified that chemotherapy limited her activities in many ways, but she was experiencing fatigue prior to her cancer treatments, as far back as March 2020. Tr. 46. She went on to state that she also experiencing some level of cognitive decline, a sort of "brain fog," because she was unable to keep up with the administrative work for her business and finances. Tr. 47-48. She then explained that when she experiences occipital neuralgia, any movement of her head results in shooting pains that are 9/10, and she must lay down without moving her head. Tr. 48-49. Plaintiff testified that she has experienced good days and bad days since January 2020, and that her pain has only worsened since then. Tr. 50-51. She stated that she experiences one or two good days a week where she can run errands, such as picking up prescriptions and leaving the house. Tr. 52. She also stated that she can sit for 20 minutes before needing to change position, and that she could stand for 30 minutes. Tr. 52.

The ALJ determined that her medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 24. The ALJ reasoned that plaintiff's testimony of her disabling limitations was inconsistent with (1)

evidence of her daily activities and (2) evidence from the medical record. Tr. 24-27. Plaintiff argues only that her activities are not inconsistent with her reports of extreme fatigue from her anemia and breast cancer, and that her medical records are not inconsistent with her fatigue testimony.[5]

### C. Daily Activities

The ALJ rejected plaintiff's subjective symptom testimony because it was inconsistent with her reported daily activities and functioning. Tr. 19-22. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639.

Here, the ALJ discounted plaintiff's testimony because her activities were inconsistent with her complaints of limited activity. The ALJ made note of several instances showing plaintiff was not very limited by her extreme fatigue. Tr. 24-25, 41-42. For example, around the time of her diagnosis of mild anemia in October 2020, plaintiff engaged in a litany of activities, such as volunteering four days in a row for wildfire relief, discussing plans to visit her brother in order to care for their father, spent "a lot of time outside" with one of those days being for ten hours on her feet, riding her bike, engaging in online cardio workouts, working out at least two times a week, walking four miles, attending protests at least six days a week, and stopped attending protests at night but continued attending kid friendly protests due to an incident with the police. Tr. 24-26 (citing Tr. 905, 909, 914, 986, 1022, 1160, 1178). Plaintiff argues that her difficulties following her wildfire relief volunteering and her intent to help care for her father were not

---

[5] Plaintiff does not address any other aspect of the ALJ's reasoning as it pertains to subjective symptom testimony, and therefore waives all other arguments regarding symptom testimony. *Carmickle v. Commr. Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

inconsistent with her complaints of fatigue. However, according to her records, plaintiff attributed her difficulties following wildfire relief to smoke, while she attributed her difficulties with helping with her father to her family's belief that "her illnesses are attention-seeking are not valid," neither of which has anything to do with her anemia. Tr. 986, 1178.

In sum, plaintiff's activities, including volunteering for four days in a row for wildfire relief, working out at least two times a week, walking four miles, and attending protests six days a week serve as valid reasons to discount plaintiff's claim that her fatigue is disabling. Given the above, the ALJ provided clear and convincing reasons to reject plaintiff's testimony.

### D. Inconsistent Medical Record

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). While an ALJ may also consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain," *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001), they cannot reject subjective pain testimony solely on that basis. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see also* 20 C.F.R. § 404.1529(c)(2) (the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

Here, the ALJ concluded that plaintiff's testimony regarding her extreme fatigue was contradicted by medical records showing plaintiff's fatigue related to her hypothyroidism was being properly treated, that her anemia-related fatigue was also being adequately treated by blood infusions, and that her anemia progression was linked to her cancer treatments, which

resolved in less than six months. Tr. 21-22, 24-27. As support for this conclusion, the ALJ pointed to records showing plaintiff was diagnosed with hypothyroidism in March 2020, was given thyroid hormone replacement treatment, and subsequently reported significantly improved energy. Tr. 916, 3552. Plaintiff's medical records also show that while she complained she still felt significant levels of fatigue despite receiving blood infusions and iron supplements, she clarified that she experienced fatigue the day of and the day after getting her infusions and that she felt more alert. Tr. 984, 1165, 1168, 1171. Plaintiff also cites records showing she consistently complained of ongoing fatigue symptoms from February 2021 to September 2021, and that her anemia had progressed to a diagnosis of normocytic anemia. Pl.'s Opening Br. 6-7 (citing Tr. 1062, 1083, 1088, 1654, 1658, 2251, 3229, 3378). However, records show that her fatigue stemmed from her cancer treatments, and that her normocytic anemia was linked to her chemotherapy and "recent surgical intervention." Tr. 1083, 1088, 1091, 1094, 1097, 1100, 1103, 1106, 1109, 1112, 1115, 1118, 1121, 1124, 1127, 1130, 1133, 1136, 1898, 3200, 3229.

Based on the record before the Court, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom testimony based on contradictory medical evidence. An ALJ need not use the magic words, "I reject [this evidence] because…" in order to discount evidence. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). A reviewing court is not "deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Id*. The ALJ's citation to these objective findings is "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d at 958 (9th Cir. 2002). This objective evidence is

therefore a clear and convincing reason, supported by substantial evidence, for discounting plaintiff's subjective symptom testimony.[6]

## III.   RFC Determination

Finally, plaintiff asserts that the ALJ erred by failing to include limitations related to her fatigue in the RFC. According to plaintiff, her fatigue would have rendered her disabled. Pl.'s Opening Br. 16-19. This Court disagrees.

### A.   Legal Standards

The RFC must contemplate *all* medically determinable impairments, including those which the ALJ found non-severe, and evaluate all the relevant testimony, including the opinions of medical providers and the subjective symptom testimony set forth by the claimant. 20 C.F.R. §§ 404.1545, 404.1545; SSR 96–8p *available at* 1996 WL 374184. In formulating the RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations. *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only those limitations which are supported by substantial evidence must be incorporated into the RFC. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

### B.   Analysis

Plaintiff argues that her RFC should have included limitations related to her extreme fatigue because it should have been classified as severe rather than non-severe, that her improperly rejected testimony supports her complaints of fatigue, and the ALJ erred by not

---

[6] Even if the ALJ had erred in rejecting plaintiff's testimony based on inconsistencies with the medical records, the error would have been harmless because the ALJ provided at least one valid reason for rejecting plaintiff's testimony. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (finding that the ALJ's reliance on invalid reasons was harmless error because the ALJ provided other valid reasons that support the ALJ's credibility determination).

incorporating such limitations into her RFC. Pl.'s Opening Br. 16-19. Plaintiff, however, is incorrect.

Whether plaintiff's fatigue was severe or non-severe, the ALJ was required to consider it when formulating plaintiff's RFC. As discussed above, the ALJ provided valid reasons for discounting plaintiff's complaints of fatigue. The ALJ is not required to account for symptoms and limitations in the RFC that have been properly rejected. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (affirming the ALJ's RFC determination where "the ALJ took into account those limitations for which there was record support that did not depend on [the claimant's] subjective complaints"); *Jon M. v. Comm'r, Soc. Sec. Admin.*, No. 3:22-CV-00207-HZ, 2023 WL 2932009, at *6 (D. Or. Apr. 12, 2023) ("The ALJ did not include all of the limitations set out in Plaintiff's testimony, however, the Court has concluded the ALJ did not err when he partially rejected Plaintiff's testimony. Accordingly, the Court concludes the ALJ did not err when he did not conduct a 'function-by-function assessment' of Plaintiff's RFC.") Accordingly, because the ALJ did not err in discounting plaintiff's subjective complaints of fatigue, the ALJ did not err by not including fatigue-related limitations in plaintiff's RFC.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 16th day of April 2024.

ANDREW HALLMAN
United States Magistrate Judge